UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MORGAN KEEGAN & COMPANY,

    Plaintiff,

v.

DENNIS McПOLAND and PAMELA McПOLAND,

    Defendants.

CASE NO. C11-1471RSM

ORDER ON MOTION FOR A PRELIMINARY INJUNCTION

This matter is before the Court for consideration of a motion for preliminary injunction filed by plaintiff Morgan Keegan & Company ("Morgan Keegan"). Dkt. # 3. The motion was originally filed as a motion for a Temporary Restraining Order and converted by the Court to a preliminary injunction motion. Dkt. # 8. Defendants have opposed the motion. The Court heard oral argument on November 4, 2011 and now, for the reasons which follow, shall grant the motion.

FACTUAL BACKGROUND

Plaintiff filed this action as a complaint for injunctive and declaratory relief, asking the Court to enjoin an arbitration proceeding initiated by defendants before the Financial Industry Regulatory

ORDER - 1

Authority ("FINRA") pursuant to FINRA Rule 12200.[1] Dkt. # 1. The arbitration proceeding is designated as *Dennis McPoland and Pamela McPoland v. Morgan Keegan & Co*., FINRA Case No. 11-02936, to be held in Seattle, Washington. Dkt. # 1, ¶ 9. Defendants have asserted in the arbitration proceeding claims of fraud, negligent misrepresentation, violations of securities law, negligence, and other violations. *Id*., ¶ 10. These claims arise from defendants' purchase of shares in high-yield funds ("Funds") sold by Morgan Keegan. *Id*., ¶11.

Morgan Keegan contends that it may not be compelled to arbitrate because it has no agreement regarding arbitration with the McPolands. Nor are they "customers" of Morgan Keegan who may initiate arbitration under the applicable rules of FINRA, because they purchased the funds through a third-party broker, not from Morgan Keegan. Therefore, the complaint requests a declaratory judgment that Morgan Keegan has no obligation to arbitrate the dispute with the McPolands. By this motion, Morgan Keegan requests a preliminary injunction enjoining the McPolands from further proceedings in the FINRA arbitration. The McPolands, in opposition to the motion, contend that they are "customers" of Morgan Keegan within the applicable FINRA rules, and are entitled under those rules to proceed with the arbitration.

The matter is before this Court under the diversity jurisdiction provisions of 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and the parties are completely diverse. Morgan Keegan is a regional broker-dealer incorporated under the laws of Tennessee and with its principal place of business in Memphis, Tennessee, and defendants are residents of this district. Plaintiff also asserts jurisdiction under the federal question provisions of 28 U.S.C. § 1331. Complaint, Dkt. # 1, ¶¶ 2-8.

## DISCUSSION

---

[1] FINRA, formerly the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission as a national securities association created under the Maloney Act amendments to Section 15A of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78o-3. The NASD Code of Arbitration was the predecessor to the FINRA Code, and FINRA has stated that it intended no substantive change when it replaced NASD Rule 10301 with FINRA Rule 12200. *See* Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, www.fi nra.org/web/groups/rules_regs/documents/rule_filing/p018366.pdf.

ORDER - 2

**I. Legal Standard**

In order to demonstrate that it is entitled to a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tips in its favor; and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135, 632 F.3d at 1135 (9th Cir. 2011) (holding that the Ninth Circuit's "sliding scale" approach continues to be valid following the *Winter* decision).

**II. Analysis**

A. <u>Likelihood of Success on the Merits</u>

FINRA regulates the activities of its members (securities dealers and brokers) through the FINRA Code. This replaces the former NASD (National Association of Securities Dealers) code. FINRA Rule 12200 states that parties must submit to arbitration if arbitration is either (1) required by written agreement, or (2) requested by the customer. In either case, the dispute must be between a "customer" and a member of the association (or an "associated person" of a member), and the dispute must arise "in connection with the business activities of the member." FINRA Rule 12200. Morgan Keegan does not dispute that it is a member of FINRA, and the McPolands do not assert that there is any written agreement to arbitrate. Therefore, their right to arbitrate depends on whether they are a "customer" of Morgan Keegan.

The FINRA rules do not define a "customer" other than to say that "a customer shall not include a broker or a dealer." FINRA Rule 12100(i). The McPolands argue that given the federal court policy

ORDER - 3

favoring arbitration, this "customer" definition should be read expansively, basically to include **anyone** who is not a broker or a dealer, and whose claim is related to business activities of a member. They find some support for this argument in older cases (from the 1980's and 1990's) interpreting a similar provision under NASD rules. They also acknowledge that more recently, "some courts have narrowed FINRA's jurisdiction under Rule 12200," following a case in the Eighth Circuit Court of Appeals. Plaintiff's Opposition, Dkt. # 23, p. 7, *citing Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,* 264 F. 3d 770 (8th Cir. 2001).

      The McPolands submit that cases that follow the *Fleet Boston* holding and have "extended its application to include a new *de facto* brokerage account requirement" are simply wrongly decided and "fail to apply the plain meaning of the FINRA Code." *Id.*, p. 8. However, they have not pointed to any persuasive authority that actually support their position on the meaning of "customer." The key case cited by defendants as supporting their position, *UBS Financial Services, Inc., v. West Virginia University Hospitals, Inc.*, 760 F. Supp. 2d 377 (S.D.N.Y 2011), was vacated in part on appeal. *UBS Financial Services, Inc., v. West Virginia University Hospitals, Inc.,* —F. 3d — (2d Cir , Sept. 22, 2011). And the case which the district court in *West Virginia University Hospitals* (and the McPolands) quoted for its expansive reading of the arbitration requirement, namely *Wachovia Bank, N.A. v. VCG Special Opps. Master Fund, Ltd*, 2010 WL 1222026 (S.D.N.Y. 2010), was reversed on appeal. *Wachovia Bank, N.A., v. VCG Special Opportunities Master Fund, LTD*, — F. 3d — , 2011 WL 5110122 (S.D.N.Y. October 28, 2011).[2] This case specifically addresses "whether VCG was a 'customer' of WCM [Wachovia Capital Markets] within the meaning of the FINRA Code with respect

---

[2] The Court notes that this decision was issued after defendants' responsive briefing on this motion was complete, so defendant did not have an opportunity to address it until the hearing on the motion.

ORDER - 4

to the credit default swap in question." *Id*., at *1. The court noted that there was no brokerage agreement or other relationship between VCG and WCM, and that neither Wachovia Bank nor WCM recommended the transaction to VCG. *Id*., at *8. Without "grappl[ing] with the precise boundaries of the FINRA meaning of "customer, the court stated that "no rational factfinder could infer that VCG was a customer of WCM." *Id,* at *9.

While the Ninth Circuit Court of Appeals has not yet addressed the question, a number of district courts in this circuit, including this district court, have found that individuals who purchased Morgan Keegan funds from third-party broker-dealers are not "customers" within the meaning of FINRA Rule 12200, and cannot compel arbitration. *See*, *Morgan Keegan & Company v. Jindra, et. al,*, 2011 WL 5869586 (W.D.Wash., November 22, 2011); *Morgan Keegan & Company, Inc., v. Shorthouse, et al.,* C11-5734BHS, Dkt. # 38 (W.D.Wash., November 22, 2011); *Morgan Keegan & Company, Inc., v. Drzayick, et al.*, 2011 WL 5403031 (D. Idaho, November 8, 2011). On similar facts, a California district court reached the same conclusion on the meaning of "customer" in a case involving a different broker-dealer, granting a motion for preliminary injunction and ordering that a pending arbitration proceeding must be stayed pending trial on the merits. *Herbert J. Sims & Co. v. Roven*, 548 F.Supp. 2d 759 (N.D.Cal. 2008) (finding "that Plaintiff has a probability of success of showing that the relationship between Defendants and Plaintiff was too tenuous to establish a customer relationship and compel arbitration.")

Districts courts in other circuits have also found that investors who bought Morgan Keegan funds from third-party broker-dealers were not "customers" of Morgan Keegan entitled to compel arbitration. *See*, *Zarecor v. Morgan Keegan & Co.,* 2011 WL 5592861 (E.D.Ark., July 29, 2011) (vacating an arbitration award on the grounds that the plaintiff was not a "customer"); *Zarecor v.*

ORDER - 5

*Morgan Keegan & Co.*, 2011 WL 5508860 (E.D. Ark, November 10, 2011) (denying Zarecor's motion for reconsideration); *Morgan Keegan & Company v. Ras*, No. 11-CV-352-KKC, C.D.Ky., November 14, 2011; *Morgan Keegan & Company v. Shadburn*, 2011 WL 5244696 (M.D.Ala, November 3, 2011); *citing Morgan Keegan v. Garrett, et al.,* 2011 WL 4716060 (S.D.Tex, Sept. 30, 2011) (vacating an arbitration award). In this last case, the court unequivocally stated,

> Harris and Goodwin were not Morgan Keegan's customers. A customer has a direct relationship with a firm. Harris and Goodwin bought shares in the fund from third-party brokers on the secondary market. Their information was from the street. They never gave money to Morgan Keegan. They never contacted Morgan Keegan for advice. They had no direct relationship with Morgan Keegan.

*Id.* at * 1.

Finally, in a case involving a different broker-dealer of securities, a Virginia district court considered the exact argument asserted here, namely that certain investors must be "customers" of the plaintiff Waterford because they are neither brokers nor dealers under FINRA Rule 12100(i). *Waterford Investment Services, Inc., v. Bosco*, 2011 WL 3820723 (E.D.VA., July 29, 2011). The court observed that

> [d]efendants' reading of "customer" for purposes of Rule 12200 would allow any customer of a FINRA member to compel arbitration against *any other* FINRA member, regardless of whether there had been any relationship or contact between the parties.

*Id*. at * 6. Although the court eventually concluded that the defendants were "customers" of an "associated person" of plaintiff Waterford, thus bringing the matter under Rule 12200, the court's reasoned rejection of the broad reading of "customer" is still relevant to this proceeding.

Defendants have not provided the Court with any authority contrary to the cases cited above. The Court therefore finds no basis to diverge from these well-reasoned decisions, and joins the courts in this circuit and others which have found that investors who purchased Morgan Keegan funds from third-

ORDER - 6

party broker-dealers are not "customers" of Morgan Keegan within the meaning of FINRA Rule 12200, and may not compel arbitration under that rule. This finding leads directly to the conclusion that plaintiff has a high likelihood of success on the merits of its claim that it may not be compelled to arbitrate.

    B. <u>Irreparable Harm and Balance of Hardships</u>

A party resisting arbitration suffers irreparable harm when it is "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F. 3d 125, 129 (2d Cir. 2003). "[S]everal courts have held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm." *Chicago School Reform Board of Trustees v. Diversified Pharm. Services, Inc.,*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999). As the Eighth Circuit Court of Appeals has observed, courts "uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award." *McLauglin Gormley King Co. V. Terminix International Co., L.P.*, 105 F. 3d 1192, 1194 (8th Cir. 1997).

Cases cited above, vacating a FINRA arbitration award on the grounds that the investor was not a customer of Morgan Keegan, demonstrate that arbitration would be a futile exercise, leading to further proceedings in this Court to set aside the award. *Zarecor*, 2011 WL 5592861; *Morgan Keegan v. Shadburn*, 2011 WL 5244696. In light of these rulings, Morgan Keegan has amply demonstrated the irreparable harm that would result were the arbitration proceedings not enjoined. The McPolands have demonstrated no countervailing benefit they would gain from proceeding with an arbitration when the award, if any, is so likely to be vacated. The balance of hardships thus weighs heavily in plaintiff's

ORDER - 7

favor.

C. <u>Public Interest</u>

Generally, the public interest favors resolution of disputes through arbitration rather than litigation. However, the policy favoring arbitration is "based on the presumption that the subject of the arbitration is one that the parties actually agree to arbitrate." *Chicago School Reform Board of Trustees*, 40 F. Supp. 2d at 996-97. Here, there was neither an agreement to arbitrate nor a customer-broker relationship between plaintiff and defendant. Neither the public interest nor the interest of judicial economy would be served by allowing the arbitration to proceed, when such arbitration could lead to further proceedings in this Court to vacate an award.

D. <u>Bond</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may issue a preliminary injunction only if the movant gives security in an amount the Court deems proper to pay costs and damages sustained by a party who is wrongfully enjoined. Fed.R.Civ.Proc. 65(c). Defendants have not asserted any amount which would provide for security in the event they have been wrongfully restrained, and the Court finds none necessary.

CONCLUSION

Plaintiff has met the burden of establlishing that it is entitled to a preliminary injunction, enjoining the defendants from proceeding with arbitration. Accordingly, it is hereby ORDERED:

(1) Plaintiff's motion for a preliminary injunction is hereby GRANTED, and defendants are enjoined, until further order of the Court, from pursuing claims against Morgan Keegan in the FINRA arbitration instituted by them, FINRA Case. No. 11-02936.

(2) The complaint in this matter requests as relief (1) "a declaratory judgment that Morgan

ORDER - 8

Keegan has no obligation to arbitrate the FINRA Arbitration initiated by Defendants," together with (2) "entry of orders temporarily restraining and preliminarily and permanently enjoining Defendants from further proceedings against Morgan Keegan in the FINRA arbitration." Complaint, Dkt. # 1, p. 7. Plaintiff has by this injunction, should it be made permanent, obtained all relief sought with the exception of entry of the declaratory judgment. It appears there are no legal or factual issues that remain to be decided.

(3) Pursuant to Rule 65(a)(2), the Court may consolidate a preliminary injunction hearing with a trial on the merits, provided a party's right to jury is preserved. Fed.R.Cov.P. 65(a)(2). The parties are accordingly ORDERED TO SHOW CAUSE, on or before December 23, 2011, why the Court should not deem the matter consolidated, and issue a permanent injunction together with a declaratory judgment that Morgan Keegan has no obligation to arbitrate the FINRA Arbitration. The Court notes that defendant has filed a jury demand in answering the complaint, and defendants' response to the Order to Show Cause shall specify what issues remain to be tried to a jury, together with legal authority.

(4) In lieu of responding to the Order to Show Cause, the parties may stipulate to issuance of a permanent injunction and entry of judgment, which shall be immediately appealable.

Dated this 6th day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 9